## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORIGA
## NEWNAN DIVISION

RITA MEEKS, INDIVIDUALLY
AND AS ADMINISTRATRIX OF
THE ESTATE OF ALAN HEMBREE,

      PLAINTIFFS,

V.

ROBERT LYNN NEWCOMB,
CELADON TRUCKING SERVICES,
INC., and WABASH NATIONAL
CORPORATION,

      DEFENDANTS.

CIVIL ACTION NO.:

**Notice of Removal of Action under
28 U.S.C § 1441(b) [Diversity
Jurisdiction] and
28 U.S.C § 1446(c) [Bad Faith]**

**Demand for Jury Trial**

## <u>NOTICE OF REMOVAL</u>

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

      **PLEASE TAKE NOTICE THAT** Defendant Wabash National Corporation

("Defendant" or "Wabash") hereby removes the action described below from the

Superior Court of Carroll County, Georgia, to the United States District Court for

The Northern District of Georgia, Newnan Division, pursuant to 28 U.S.C. §§ 1332,

1441 and 1446.  As grounds for this removal, Wabash states as follows:

1

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A. **Parties**

1.   On September 25, 2015, Plaintiff initiated this wrongful death action, styled as *Rita Meeks, individually and as Administratrix of the Estate of Alan Hembree v. Eulus Holber Keown, Jr., Robert Lynn Newcomb, Celadon Trucking Services, Inc. and Wabash National Corporation*, Case No. 15-CV-01044 ("the Superior Court Action"), by filing her "Complaint for Damages" ("the Meeks Complaint") in the Superior Court of Carroll County, Georgia.  (*See* Meeks Complaint, attached hereto as Exhibit "A".)

2.   Plaintiff is, and at all relevant times has been, a citizen of the State of Georgia. (*Id.*, ¶ 1.)

3.   Plaintiff named as Defendants in the Superior Court Action (a) the foreign corporations Wabash and Celadon Trucking Services, Inc. ("Celadon"); and (b) the individual defendants Eulus Holbert Keown, Jr. ("Keown") and Robert Lynn Newcomb ("Newcomb"). (*Id.*)

4.  Wabash is a Delaware corporation with its principal place of business in Lafayette, Indiana.  (*Id.*, ¶¶ 10-11; *see also* Wabash Incorporation Records, attached hereto as composite Exhibit "B".)[1]

5.  Celadon is a New Jersey corporation with its principal place of business in Indianapolis, Indiana.  (Ex. A, ¶¶ 5-6; *see also* Celadon Incorporation Records, attached hereto as composite Exhibit "C".)

6.  Keown is a resident of the State of Georgia who resides in Carrollton, Georgia.  (Ex. A, ¶ 2.)

7.  Newcomb is a resident of the State of Virginia.  (*Id.*, ¶ 3.)

8.  Thus, at the time Plaintiff initiated the Superior Court Action, Keown was the only non-diverse named Defendant.

**B.  Plaintiff's Allegations Against Defendants**

   i.  *Claims Against the Diverse Defendants (Celadon, Newcomb & Wabash)*

9.  The Meeks Complaint arose out of an auto accident ("the Subject Accident") that occurred on November 13, 2012 at approximately 10:25 p.m. on Interstate-20 Westbound.  (Ex. A, ¶ 20.)

---

[1] The Court may take judicial notice of documents publicly filed with State corporation divisions, such as the Georgia Secretary of State. *E.g., Allstate Ins. Co. v. Estate of Robert M. Levesque,* CIV.A. No. 8:08-CV-2253, 2010 WL 2978037, at *1 (July 19, 2010) (citing *Greenwood v. Compucredit Corp.*, 617 F. Supp.2d 980, 983 (N.D. Cal. 2009) (taking judicial notice of a corporation's annual registration filed with the Georgia Secretary of State)).

10. The Subject Accident resulted in the death of Plaintiff's son, Alan Hembree ("Hembree").  (*Id.*, ¶ 23.)

11. The Subject Accident involved a car being driven by Hembree, a Celadon tractor being driven by Newcomb, and a trailer that Wabash sold to Celadon which was attached to the Celadon tractor.  (*Id.*, ¶¶ 9, 20, 28-52.)

12. As to Celadon and Newcomb, Plaintiff alleged that Newcomb "suddenly and without warning attempted to merge into" the lane of traffic occupied by Hembree, causing Hembree to collide with the underride guard on the rear of the trailer.  (*Id.*, ¶¶ 21-22.)

13. As to Wabash, Plaintiff alleged that it manufactured the underride guard with which Hembree collided and, further, that the underride guard failed due to certain design and manufacturing defects.  (*Id.*, ¶¶ 22, 43-52.)

14. As to Celadon and Newcomb, Plaintiff asserted claims for negligence and wrongful death.  (*Id.*, Counts 2-3 & unnumbered Count 5.)

15. As to Wabash, Plaintiff asserted claims for products liability and wrongful death.  (*Id.*, Count 4 & unnumbered Count 5.)

ii. *Claims Against the Removal Spoiling Defendant (Keown).*

16. Keown—the only non-diverse Defendant—was not involved in the Subject Accident.  (*Id.*, ¶¶ 15-19.)

17. Rather, Keown was involved in a separate, earlier accident ("the Earlier Accident") on Interstate-20 Westbound, which occurred more than seven (7) hours before the Subject Accident. (*Id.*)

18. Plaintiff alleged that Keown caused the Earlier Accident and, further, that such accident "caused the far two right lanes of I-20 westbound traffic to be closed for several hours." (*Id.*)

19. Plaintiff alleged that, "in response to [this] hazard created by [Keown], [Newcomb] . . . attempted to merge into the far left lane [occupied by Hembree] in avoidance of the partial road closure." (*Id.*, ¶ 21.)

20. Plaintiff alleged that Keown's negligence in causing the Earlier Accident— more than seven (7) hours before the Subject Accident—directly and proximately caused Hembree's death. (*Id.*, ¶¶ 24-27.)

21. Plaintiff asserted claims for negligence and wrongful death against Keown. (*Id.*, Count 1 & unnumbered Count 5.)

C. **Relevant Procedural History**

22. On October 22, 2015, Keown filed his Answer to the Meeks Complaint. (Keown Answer, attached hereto as Exhibit "D".)

23. On the same day, Celadon and Newcomb filed their Answer. (Celadon & Newcomb Answer, attached hereto as Exhibit "E.")

24. Wabash filed its Answer on November 17, 2015. (Wabash Answer, Exhibit "F".)

    i. *Pursuit of Discovery from the Diverse Defendants (Celadon, Newcomb and Wabash).*

25. On November 11, 2015, Plaintiff served Newcomb and Celadon with written discovery requests, consisting of Requests for Admission, Interrogatories and Requests for Production of Documents. On May 5, 2016, Plaintiff served Celadon with its Second Continuing Interrogatories and Requests for Production of Documents. (Plaintiff's Discovery Requests to Celadon, attached hereto as composite Exhibit "G".)

26. December 7, 2015, Plaintiff served Wabash with written discovery requests, consisting of Requests for Admission, Interrogatories and Requests for Production of Documents. (Plaintiff's Discovery Requests to Wabash, attached hereto as composite Exhibit "H".)

27. During discovery, Plaintiff noticed the deposition of Newcomb three times, once on January 28, 2016, another time on June 1, 2016, and a third time on November 11, 2016. Plaintiff noticed the 30(b)(6) deposition of Celadon's Safety Director on November 11, 2016. (Notices of Deposition to Celadon Defendants, attached hereto as composite Exhibit "I".)

28.    Plaintiff also twice noticed the 30(b)(6) deposition of a Wabash designee, once on May 3, 2016, and again on November 11, 2016.   (Notices of Deposition to Wabash, attached hereto as Exhibit "J".)

    ii.  *Pursuit of Discovery from the Removal-Spoiling Defendant (Keown).*

29.    Plaintiff did not serve Keown with any written discovery requests in the Superior Court Action.   (Declaration of Joseph A. White, attached hereto as Exhibit "K", at ¶ 13.)[2]

30.    Plaintiff did not notice Keown's deposition during discovery in the Superior Court Action.   (*Id.*, ¶ 14.)

31.    Indeed, Plaintiff did not seek any discovery regarding the Earlier Accident during the Superior Court Action—either from Keown, the other parties to the Earlier Accident, or the law enforcement personnel that investigated and cleared the Earlier Accident. (*Id.*, ¶¶ 15-16 & Ex. 4.)

    iii. *Amount in Controversy.*

32.    The Meeks Complaint does not specify the amount of damages that Plaintiff seeks to recover for the alleged wrongful death of Hembree.  (*See generally* Ex. A.)

---

[2] In addition to the pleadings, the Court may consider supplemental materials, like affidavits, in evaluating a notice for removal.  *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005).

33.   On April 22, 2016, however, Plaintiff sent counsel for the diverse
      Defendants (Celadon, Newcomb and Wabash) a letter demanding $2.5
      million dollars in settlement of Plaintiff's claims.  (Ex. K, ¶ 6 & Ex. 1.)

      iv. *Voluntary Dismissal of the Removal Spoiling Defendant (Keown).*

34.   On November 4, 2016—four hundred six (406) days after the complaint was
      filed—Plaintiff's counsel sent defense counsel an email with a draft consent
      motion and order for voluntary dismissal of her claims against Keown, with
      prejudice.  (Ex. K, ¶ 7 & Ex. 2.)

35.   On November 15, 2016, Plaintiff moved to voluntary dismiss her claims
      against Keown with prejudice.   (Consent Motion for Dismissal with
      Prejudice, attached hereto as Exhibit "L.")

36.   On December 5, 2016, the Superior Court of Carroll County entered an
      Order dismissing Keown with prejudice.  (Order, attached hereto as Exhibit
      "M".)

37.   Wabash received notice of the Order dismissing Keown, via the Court's
      electronic filing system, on the same day it was entered.  (Ex. K, ¶ 10 & Ex.
      3.)

38.   Keown did not pay any funds to Plaintiff in consideration of the dismissal
      with prejudice.  (*Id.* K, ¶ 17.)

39.   As of December 5, 2016, when the Superior Court of Carroll County dismissed Keown, the only remaining Defendants are Celadon, Newcomb and Wabash, all of whom are completely diverse from Plaintiff within the meaning of 28 U.S.C. §§ 1332, 1441 and 1446.

### GROUNDS FOR REMOVAL

40.   A defendant may remove any state court civil action for which the District Courts of the United States have original jurisdiction to the federal district court encompassing the place in which the action is pending. 28 U.S.C. § 1441(a).

41.   Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over this case by reason of diversity of citizenship and the amount in controversy, which exceeds $75,000, exclusive of interests and costs.

42.   While a defendant ordinarily may not remove a case on grounds of diversity more than one year after the initiation of the action, that limitation does not apply when the plaintiff has acted in bad faith in order to prevent removal. 28 U.S.C. § 1446(c)(l)).

43.    As shown below, Wabash is entitled to remove, and timely removes, the Superior Court Action to this court because Plaintiffs joined and kept Keown in the case in bad faith in order to thwart removal of this Action to federal

court. Accordingly, removal is not barred by the one-year limitation set forth in 28 U.S.C. § 1446(c)(l), due to Plaintiffs' bad-faith efforts to prevent removal.

**A.** **Complete Diversity of Citizenship Exists**

44.   Code Section 28 U.S.C. § 1332(a) requires complete diversity of citizenship between the plaintiff and the defendants.  "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* Plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

45.   "For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business." *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005)

46.   "A case becomes removable once the non-diverse defendant is formally dismissed from the case."  *Noyes v. Universal Underwriters Inc. Co.*, 3 F. Supp.3d 1356, 1363 (M.D. Fla. 2014) (citing *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11th Cir. 1988)) ("[N]ondiverse defendant must be formally dismissed from the case to permit a subsequent removal…").

47.   As of the date of this Notice, complete diversity of citizenship exists between Plaintiff and the remaining Defendants Celadon, Newcomb and Wabash.

48.   Plaintiff is a Georgia citizen. (Ex. A, ¶ 1.)

49.   For diversity purposes, Celadon is a citizen of Indiana and New Jersey. (Ex. A, ¶¶ 5-6 & Ex. C.)

50.   Newcomb is a citizen of the State of Virginia.  (*Id.*, ¶ 3.)

51.   For diversity purposes, Wabash is a citizen of Delaware and Indiana.  (Ex. A ¶¶ 10-11 & Ex. B.)

52.   Thus, Plaintiff and the remaining Defendants (Celadon, Newcomb and Wabash) are all completely diverse.

B.  **The Amount in Controversy Exceeds $75,000.00.**

53.   Documents that demonstrate a plaintiff's own estimation of a claim's value are a proper means of supporting the allegations in a notice of removal. *See, e.g., Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1212 n. 62 (11th Cir. 11th Cir. 2007) (noting that federal courts consider items such as settlement offers and emails estimating damages when evaluating whether the amount in controversy requirement is met); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (explaining that the district court can properly consider,

for purposes of removal, correspondence in which plaintiff's counsel acknowledges that the value of the claim may exceed $75,000).

54.  This is a wrongful death action.  (Ex. A, unnumbered Count 5.)

55.  The jurisdictional amount in controversy is satisfied because Plaintiff has indicated she is seeking damages in excess of $75,000, exclusive of interest and costs, as exhibited by her letter to the diverse Defendants (Celadon, Newcomb and Wabash) demanding $2.5 million dollars in settlement of her claims. (Ex. K, ¶ 6 & Ex. 1.)

**C. Wabash's Notice of Removal is Timely.**

56.  Code Section 28 U.S.C. § 1446(b)(3) states that "[e]xcept as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.A. § 1446(b)(3).

57.  The Superior Court of Carroll County entered its Order dismissing Keown on December 5, 2016.  (Ex. M.)

58.  Wabash received a copy of that Order on December 5, 2016.  (Ex. K, ¶ 10 & Ex. 3.)

59.   Upon the Superior Court's entry of the Order of dismissal, complete diversity existed between Plaintiff and remaining Defendants.  *Maseda* 861 F.2d at 1252; *Noyes*, 3 F. Supp.3d at 1363.

60.   Wabash timely files its Notice of Removal within thirty (30) days of its receipt of the Order of dismissal.  28 U.S.C.A. § 1446(b)(3).

### D. The One-Year Limitation on Removal Does Not Apply Because Plaintiff Engaged in Bad Faith.

61.   Code Section 28 U.S.C. § 1446(c)(1) provides that a "case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, *unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action*." 28 U.S.C. § 1446(c)(l) (emphasis added).

62.   "In Georgia, an action is commenced when the complaint is filed." *Cameron v. Teeberry Logistics, LLC*, 920 F. Supp.2d 1309, 1312 (N.D. Ga. 2013) (citations omitted).

63.   Here, although Wabash files this Notice of Removal more than one year after Plaintiff commenced the Superior Court Action (on September 25, 2015), its Notice is nevertheless timely because Plaintiff joined Keown in bad faith in order to destroy complete diversity.  (Ex. A.)

13

ii. *Legal Standard for "Bad Faith" Under Section 1446(c)(1).*

64.   "Historically, a case could be removed to federal court at any time if diversity jurisdiction arose." *Higgins v. Philadelphia Indemnity Ins. Co.*, CIV.A. No. 16-CV-0564, 2016 WL 6304740, at *1 (N.D. Okla. Oct. 27, 2016) (citing *Aguayo v. AMCO Ins. Co.*, 59 F. Supp.3d 1225, 1269 (D. N.M. 2014)).

65.   In 1988, Congress added a one-year limit to removal based on diversity jurisdiction "'as a means of reducing the opportunity for removal after substantial progress has been made in state court.'" *Id.* (citations omitted).

66.   In 2011, Congress "amended the one-year limitation to include 'a limited exception, authorizing district courts to permit removal after the 1-year period if the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.'" *Id.* (citations omitted).

67.   Congress added the exception "to prevent plaintiffs from joining non-diverse parties . . . solely to prevent a defendant from removing to federal court."

14

*Heacock v. Rolling Frito-Lay Sales, LP,* CIV.A. No. C16-0829-JCC, 2016 WL 4009849, at *2 (W.D. Wash. July 27, 2016) (citations omitted).[3]

68. Thus, effective January 6, 2012, Code Section 1446(c)(1) recognizes the right of a defendant to remove an action kept out of federal court for more than one-year because of a plaintiff's bad faith conduct.   28 U.S.C. § 1446(c)(1).

69. The comments to the amendment to Section 1446 indicate that is intended to apply in situations such as the following:

> A plaintiff with the motive of defeating removal, for example, may be able to join as a defendant, in a case in which there is genuine diversity between the plaintiff and the other defendants, someone of nondiverse citizenship whom *the plaintiff does not really intend to sue but who is arguably liable on the claim and hence properly joined under state law. The plaintiff can then just wait a year and drop that party, polishing the action to just the point desired and at the same time dissolving the threat of federal jurisdiction.*

> Comments to 28 U.S.C. § 1446 (emphasis added); *see also Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 (5th Cir. 2003) ("Congress may

---

[3] The amendment to 28 U.S.C. § 1446(c)(l) was a codification of the majority view among federal courts, which held that a plaintiff was estopped by its own bad faith from asserting the one-year limitation. *See, e.g., Wilson v. General Motors Corp.*, 888 F.2d 779, 781 (11th Cir.1989) (holding that one-year bar to removal under former 28 U.S.C. § 1446(c) was "procedural" and "does not require federal courts to remand such cases to the state courts"); *Harris Corp. v. Kollsman, Inc.*, 97 F. Supp. 2d 1148, 1151 (M.D. Fla. 2000) ("*absent a finding of waiver or estoppel*, federal courts rigorously enforce the statute's thirty-day filing requirement") (emphasis added).

have intended to limit diversity jurisdiction, but it did not allow plaintiffs to circumvent it altogether.   Strict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction.").

70. Case law interpreting Section 1446(c)(1)'s "bad faith" exception is not well-developed, either in this judicial circuit or elsewhere.   *Noyes v. Universal Underwriters Ins. Co.*, 3 F. Supp.3d 1356, 1362 (M.D. Fla. 2014) (noting that "[t]here is little case law interpreting subsection (c)" of Code Section 28 U.S.C. § 1446); *Cameron,* 920 F. Supp.2d at 1316 ("Following the 2011 amendment to § 1446(c), few cases have analyzed whether a plaintiff has acted in bad faith . . ."); *see also, e.g., Heller v. American States Ins. Co.*, CIV.A. No. 15-9771 DMG, 2016 WL 1170891, at *3 (C.D. Cal. March 26, 2016) ("The Ninth Circuit has yet to address the applicable standard for the bad faith exception under section 1446(c)."); *Comer v. Schmitt,* CIV.A. No. 2:15-CV-2599, 2015 WL 5954589, at *2 (S.D. Ohio Oct. 14, 2015) ("The Sixth Circuit has not clearly defined the meaning of 'bad faith' in the statute."); *Shorraw v. Bell*, CIV.A. No. 4:15-CV-03998-JMC, 2016 WL 3586675, at *5 (D. S.C. July 5, 2016) ("In the Court of Appeals for the

Fourth Circuit, what constitutes bad faith under § 1446(c)(1) is a developing

standard.").

71.     The leading case analyzing Section 1446(c)(1)'s "bad faith" exception is

*Aguayo v. AMCO Ins. Co.*, 59 F. Supp.3d 1225 (D. N.M. 2014).  In *Aguayo*,

the United States District Court for the Northern District of New Mexico

(after a lengthy and thorough analysis) articulated the following two-part test

for determining whether a plaintiff engaged in "bad faith" within the

meaning of Section 1446(c)(1):

> The Court interprets the bad-faith exception—which is only two years
> old and which no court has yet comprehensively construed—to
> require an inquiry into whether the plaintiff kept a removal-spoiling
> party in the case only for the purpose of preventing removal. The
> Court construes this inquiry to entail a two-step standard. *First, the
> Court assesses whether the plaintiff actively litigated its case against
> the removal spoiler in state court. A finding that the plaintiff did not
> actively litigate against the removal spoiler constitutes bad faith, and
> the Court will retain jurisdiction over the case.* If, on the other hand,
> the Court finds that the plaintiff actively litigated against the removal
> spoiler, that finding creates a rebuttable presumption that the plaintiff
> acted in good faith. Second, the defendant may rebut the good-faith
> presumption, with evidence already in the defendant's possession, that
> the plaintiff kept the removal spoiler in the case to defeat removal; the
> defendant will not, however, receive discovery or an evidentiary
> hearing in federal court to obtain such evidence.

*Aguayo*, 59 F. Supp. 3d at 1228–29 (emphasis added); *accord Forth v.*

*Diversey Corp.*, CIV.A. No. 13-CV-808-A, 2013 WL 6096528, at *3 (W.D.

N.Y. Nov. 20, 2013) ("'[B]ad faith "may be overt or may consist of inaction

. . . [such as] lack of diligence and slacking off.""") (alterations in original) (citations omitted).

72.  Numerous district courts have looked to, and applied, the two-part *Aguayo* test in determining whether a plaintiff engaged in "bad faith" within the meaning of Section 1446(c)(1).  *See, e.g., Bristol v. Ford Motor Co.*, CIV.A. No. 4:16-CV-01649-JAR, 2016 WL 6277198, at *3-4 (E.D. Mo. Oct. 27, 2016); *Heacock*, 2016 WL 4009849, at *3-4.

73.  Other district courts "have found bad faith where the 'plaintiff engaged in strategic gamesmanship to prevent a defendant's removal from state court.'" *See, e.g., Heller*, 2016 WL 1170891, at *3 (quoting *Ehrenreich v. Black*, 994 F. Supp.2d 284, 288 (E.D. N.Y. 2014)); *Shorraw*, 2016 WL 3586675, at *5 ("Despite lacking a definitive test for bad faith, Fourth Circuit district courts routinely evaluate bad faith under § 1446(c)(1) by determining whether plaintiffs engaged in forum manipulation specifically to prevent removal.") (citations omitted); *see also Tedford*, 327 F.3d at 427 (in decision that preceded 2011 amendment to Section 1446(c)(1), stating that "forum manipulation justifies application of an equitable exception to" predecessor statute).

18

74.  Regardless of the standard applied, the analysis is essentially the same: "federal courts that have examined the new language [of § 1446(c)(1)] agree that the issue is whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove." *Hiser v. Seay*, CIV.A. No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014) (citations omitted); *accord Comer*, 2015 WL 5954589, at *2 (same).

75.  "Bad faith, for the purposes of § 1446(c)(1), need not amount to malicious or unsavory conduct." *Comer*, 2015 WL 5954589, at *4.  Rather, "[t]o find bad faith, the Court need only determine that Plaintiffs engaged in intentional action or inaction that prevented [the removing defendant] from otherwise properly filing for removal before the expiration of the one year period." *Id.; see also Hiser*, 2014 WL 6885433, at *4 ("The crux of the amendment to the statutory language is whether the Plaintiffs intentionally took actions to prevent Defendants from removing the case to federal court.")

76.  District courts ascertain a plaintiff's intent by examining the manner in which the plaintiff conducted the litigation against the removal-spoiling

defendant.[4]   *E.g.*, *Heller* 2016 WL 1170891, at *2–3 (denying plaintiff's motion to remand where plaintiff did not actively litigate claims against removal-spoiling defendant in that she did not serve the defendant with a summons for more than one year); *Hiser*, 2014 WL 6885433, at *4 (denying plaintiff's motion to remand where plaintiff admittedly waited to settle claims against removal-spoiling defendant until more than one (1) year after case was initiated); *Forth*, 2013 WL 6096528, at *3 (denying plaintiff's motion to remand where plaintiff agreed to dismiss removal-spoiling defendant but delayed doing so, sought no discovery from that defendant, and offered inconsistent explanations for delaying dismissal of defendant); *Comer*, 2015 WL 5954589, at *4 (denying plaintiff's motion to remand upon finding that plaintiff deliberately delayed consummating settlement with removal-spoiling defendant in order to prevent removal);  *In re: Asbestos Products Liability Litigation (No. VI)*, MDL Docket No. 875, 2016 WL 4264193, at *3 (E.D. Pa. Aug. 11, 2016) (denying plaintiff's motion to remand where plaintiff did not seek discovery from removal-spoiling defendant and voluntarily dismissed defendant more than one year after

---

[4] *Forth*, 2013 WL 6096528, at *3 ("'Since it would be extraordinary for a party to directly admit a "bad faith" intention, his motive must of necessity be ascertained from circumstantial evidence.'") (citations omitted).

filing suit); *Lawson v. Parker Hannifin Corp.*, CIV.A. No. 4:13–CV–923–O, 2014 WL 1158880, at *4–6 (N.D. Tex. Mar. 20, 2014) (denying plaintiff's motion to remand where plaintiff did not actively litigate claims against removal-spoiling defendant in that she failed to serve him with discovery requests or notice his deposition, failed to seek default judgment when he failed to timely answer complaint, and nonsuited the defendant shortly after expiration of one (1) year bar on removal to federal court).

77.  Here, Plaintiff's bad faith is demonstrated by the manner in which she joined, pursued her claims against, and ultimately voluntarily dismissed the removal-spoiling Defendant, Keown (with no payment from him).

78.  First, Plaintiff joined Keown as a Defendant in the Superior Court Action despite the fact that he was *not even involved* in the Subject Accident; rather, he was alleged to have caused an Earlier Accident that occurred *more than seven (7) hours before* and which, in turn, was alleged to have somehow caused or contributed to the Subject Accident and to Hembree's death.[5] (Ex. A.)

---

[5] Although this fact is highly suggestive of fraudulent joinder or misjoinder, *see, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 1990), Wabash does not allege, and need not establish, that Plaintiff fraudulently joined or mis-joined Keown in order to invoke Section 1446(c)(1)'s bad faith

79. Second, Plaintiff did not "actively litigate" her claims against Keown.

80. Whereas Plaintiff served written discovery requests on the diverse Defendants (Celadon, Newcomb and Wabash) in the Superior Court Action, Plaintiff did *not* serve Keown with any written discovery, and let the fact discovery deadline expire as to that Defendant.  (Exs. G, H & K, ¶¶ 12-13.)

81. Whereas Plaintiff noticed the depositions of the diverse Defendants (Celadon, Newcomb and Wabash), Plaintiff did *not* notice or take Keown's deposition before voluntary dismissing him from the case.  (Exs. I, J, & K, ¶¶ 12, 14.)

82. Whereas Plaintiff hired experts to support her claims of liability against the diverse Defendants, Plaintiff disclosed no such expert as to Keown.  (Ex. K, ¶¶ 15-16 & Ex. 4.)

83. Indeed, Plaintiff never sought or obtained any discovery concerning the Earlier Accident from any party or nonparty—neither Keown, the other parties to the Earlier Accident, or the law enforcement personnel who investigated and cleared that Accident.  (*Id.*, ¶¶ 17-18 & Ex. 5.)

---

exception. *See, e.g., Heller*, 2016 WL 1170891, at *2 ("The bad faith exception, as distinct from the doctrine of fraudulent joinder, applies to 'plaintiffs who joined— and then, after one year, dismissed—defendants [whom] they *could* keep in the suit, but that they did not want to keep in the suit, except as removal spoliers.'") (quoting *Aguayo*, 59 F. Supp.3d at 1266).

84.  In other words, Plaintiff took no steps to *even appear* to be ready to go to trial against Keown and could not prove that Keown was responsible in any way for Plaintiff's damages.

85.  Third, Plaintiff voluntarily dismissed her claims against Keown (with prejudice) *for no consideration*, demonstrating her lack of intent to actually obtain a judgment against or any recovery from Keown.  (Ex. K, ¶ 19; *see also* Exs. L & M.)

86.  Plaintiff could not have brought her claims against Keown for any other legitimate, strategic reason—like, for example, "to pressure the removal spoiler to testify on the plaintiff's behalf against [the] other defendants"— because, here, the removal spoiler, Keown, was not even involved in the Subject Accident and, therefore, had no information to offer regarding the other, diverse Defendants.  *Aguayo*, 59 F. Supp.3d at 1229.

87.  Moreover, such an argument would be belied by the fact that Plaintiff did not actually seek any discovery from Keown in the Superior Court Action. *Forth*, 2013 WL 6096528, at *3 ("[P]laintiff's *un*sworn explanation— namely that 'more discovery was required in order to verify the accuracy of [removal-spoiling defendant's pre-Answer representations'. . . −is

contradicted by the fact that plaintiffs *did not obtain* any further discovery [such defendant] before dismissing it.") (emphasis in original).

88. Fourth, the timing of Plaintiff's voluntary dismissal of Keown reflects that Plaintiff joined Keown merely to prevent removal.   Plaintiff announced her intent to voluntary dismiss Keown four-hundred-six (406) days after she initiated the Superior Court Action, or approximately forty (40) days after the one-year deadline for removal ran. (Ex. K, ¶ 7 & Ex. 2.) Plaintiff formally moved to voluntary dismiss her claims against Keown, with prejudice, a short time later.  (Ex. L.)

89. In sum, the record demonstrates that Plaintiff joined and kept Keown in the Superior Court Action in "bad faith" in order to prevent Defendants from removing the action.  28 U.S.C. § 1446(c)(1).

## WABASH HAS COMPLIED WITH ALL REMOVAL PROCEDURES

90. Wabash has complied with the procedural requirements for removal set forth in 28 U.S.C. § 1446.

91. As noted above, in accordance with 28 U.S.C. § 1446(b)(3), Wabash filed this notice of removal within 30 days of Wabash's receipt of the first pleadings from which it could be ascertained that the instant action was removable - specifically, the Order dismissing Keown with prejudice.

92.   The United States District Court, Northern District of Georgia, Newnan Division, encompasses Carroll County, Georgia, the county from which this case is removed, and thus is the proper venue to which to remove this action pursuant to 28 U.S.C. § 1441(a).

93.   Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

94.   Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by all process, pleadings, and orders served upon Wabash in the removed action.

95.   Pursuant to 28 U.S.C. § 1446(b)(2)(A), the remaining Defendants Celadon and Newcomb consent to the removal of the removed action.  (Ex. K, ¶ 21 & Ex. 6.)

96.   Pursuant to 28 U.S.C. § 1446(d), promptly upon filing this Notice of Removal, Wabash will provide written notice of this Notice of Removal to Plaintiff and Co-Defendants Celadon and Newcomb, and file a copy of this Notice with the Clerk of the Superior Court of Carroll County, Georgia.

Respectfully submitted this 9th day of December, 2016.

FRIED & BONDER LLC

/s/ Joseph A. White
Scott L. Bonder
Georgia Bar No. 066815
Joseph A. White
Georgia Bar No. 754315
Matthew R. Kahn
Georgia Bar No. 833443

White Provision, Suite 305
1170 Howell Mill Road, NW
Atlanta, Georgia 30318
Phone: (404) 995-8808
Facsimile: (404) 995-8899

*Attorneys for Defendant*
*Wabash National Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORIGA
## NEWNAN DIVISION

RITA MEEKS, INDIVIDUALLY
AND AS ADMINISTRATRIX OF
THE ESTATE OF ALAN HEMBREE,

     PLAINTIFFS,

V.

ROBERT LYNN NEWCOMB,
CELADON TRUCKING SERVICES,
INC., and WABASH NATIONAL
CORPORATION,

     DEFENDANTS.

CIVIL ACTION NO.:


**Notice of Removal of Action under
28 U.S.C § 1441(b) [Diversity
Jurisdiction] and
28 U.S.C § 1446(c) [Bad Faith]**

**Demand for Jury Trial**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served the forgoing **NOTICE OF REMOVAL** upon opposing counsel by depositing a copy of same in the U.S. MAIL, postage prepaid and addressed to:

Matthew E. Cook
Cook Law Group, LLC
P.O. Box 2415
Gainesville, GA 30503
*Attorney for Plaintiff*

Christopher J. Adams
Kenneth S. Nugent, P.C.
1355 Peachtree Street
The Peachtree – Suite 1000
Atlanta, GA 30309
*Attorney for Plaintiff*

27

|  |  |
|---|---|
| Jan P. Cohen | Jon Greer |
| Kenneth S. Nugent, P.C. | Greer Tisinger, LLC |
| 4227 Pleasant Hill Road | 110 Dixie Street, 3rd Floor |
| Building 11, Suite 300 | Carrollton, GA 30117 |
| Duluth, GA 30096 | *Attorney for Plaintiff* |
| *Attorney for Plaintiff* |  |

John D. Dixon, Esq. and

Jan Seanor Sigman, Esq.

Dennis Corry, Porter & Smith, LLP

3535 Piedmont Road, NE

14 Piedmont Center, Suite 900

Atlanta GA 30305

*Attorneys for Robert Lynn Newcomb and Celadon Trucking Services, Inc.*

This 9th day of December, 2016.

**FRIED & BONDER LLC**

/s/ Joseph A. White

Scott L. Bonder

Georgia Bar No. 066815

Joseph A. White

Georgia Bar No. 754315

Matthew R. Kahn

Georgia Bar No. 833443

White Provision, Suite 305

1170 Howell Mill Rd. NW

Atlanta, GA 30318

Phone: 404-995-8808

Facsimile: 404-995-8899